UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HIZAM AHMED MORSHED,

    Plaintiff,

v.                                               19-CV-725 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

---

## DECISION AND ORDER

Plaintiff Hizam Ahmed Morshed brings this action under the Social Security Act, seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that he was not disabled. Dkt. 1. Morshed moved for judgment on the pleadings. Dkt. 12. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 13. Morshed replied. Dkt. 14.

For the reasons below, this Court grants Morshed's motion in part and denies the Commissioner's cross-motion.

## PROCEDURAL HISTORY

Morshed applied for child's insurance benefits based on disability and for supplemental security income on or about October 21, 2015. Dkt. 12, at 1. In both applications, Morshed alleged he had been disabled since July 16, 2013. *Id.*

The Commissioner denied Morshed's claim on February 23, 2016. Tr. 67-68.[1] On March 8, 2016, Morshed requested a hearing before an administrative law judge ("ALJ"). Tr. 111-15. The ALJ held a hearing on April 9, 2018. Tr. 17, 33-57. She issued an unfavorable decision on July 26, 2018, finding that Morshed was not disabled. Tr. 14-27. Morshed requested review of the ALJ's decision, and the Appeals Council denied his request for review on April 8, 2019. Tr. 3-8.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations

---

[1] All references to the administrative transcript (Dkt. 9) are denoted "Tr. \_\_\_\_." Page numbers for documents contained the transcript correspond to the pagination located in the lower right corner of each page.

and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II. DISABILITY DETERMINATION

In denying Morshed's application, the ALJ evaluated Morshed's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.*

But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), (d)-(e); 416.920(a)(4)(iv), (d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* §§ 404.1545, 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, she is not disabled and the analysis ends. *Id.* §§ 404.1520(f), 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* §§ 404.1520(a)(4)(iv), (f); 416.920(a)(4)(iv), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). More specifically, the Commissioner must prove that the claimant "retains a residual

4

functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I. ALJ DECISION

The ALJ analyzed Morshed's claim under the process above. At step one, the ALJ found that Morshed had not engaged in substantial gainful activity since the alleged onset date of July 16, 2013 and had not attained the age of twenty-two as of that date. Tr. 19. At step two, the ALJ found that Morshed had the following severe impairments: depression, anxiety, and joint dysfunction. Tr. 19. The ALJ also found that Morshed had the non-severe impairment of urinary frequency and a complaint of fibromyalgia, which the ALJ evaluated according to the regulations and concluded was a non-medically determinable impairment. Tr. 20. At step three, the ALJ found these impairments, alone or in combination, did not meet or medically equal any of the impairments listed in the regulations. Tr. 20-21. At step four, the ALJ determined that Morshed retains the RFC to perform medium work as defined in 20 CFR § 404.1567(c) and 416.967(c), with the following additional limitations:

> [T]he claimant could occasionally kneel, crouch, and crawl. The claimant could perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work). He is limited to simple work-related decisions, and he could tolerate few changes in a routine work setting, defined as performing some duties at the same station or location day to day. He could have occasional interaction with supervisors, coworkers, and he could engage in no tandem tasks or team type activities. He could have no contact with the public. He must have

access to restrooms, but the time off-task could be accommodated by normal breaks.

Tr. 21. Completing step four, the ALJ noted that Morshed does not have past relevant work. Tr. 25. At step five, relying on the testimony of a vocational expert, and considering Morshed's RFC, age, education, and work experience, the ALJ determined that there are jobs existing in significant numbers in the national economy that Morshed could perform. Tr. 26. These included a "Marking clerk" occupation with 290,000 jobs nationally and two "Cleaners" occupations, with 135,000 and 68,000 jobs nationally each. Tr. 26. Accordingly, the ALJ found that Morshed was not disabled, as defined in the Act, from the alleged onset date through the date of the decision. Tr. 27.

Morshed makes two arguments in support of reversal of the Commissioner's decision. First, Morshed argues that remand is required because the ALJ's RFC assessment is not supported by substantial evidence. Dkt. 12-1, at 16-23. Specifically, the ALJ erred by failing to include "migraines" as a severe impediment at step two of the sequential evaluation process and by failing to evaluate properly Morshed's intellectual disability. *Id.* Second, Morshed argues that remand is required because the ALJ failed to weigh properly the March 21, 2018 opinion of his treating clinician, Rosanna Carter, NP. *Id.* at 23-28. The Commissioner argues that substantial evidence supports the ALJ's step-two findings and that Morshed failed to show he had a medically determinable impairment related to his purported headaches or intellectual functioning. Dkt. 13-1, at 5-10. The Commissioner also

6

argues that the ALJ properly assessed NP Carter's non-medical opinions. *Id.* at 10-12.

## II. WHETHER THE ALJ FAILED TO EVALUATE PROPERLY MORSHED'S IMPAIRMENTS AT STEP TWO

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has an impairment, or combination of impairments, that is "severe"—meaning the impairment significantly limits the claimant's physical or mental ability to do basic work activities.[2] *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The claimant bears the burden of presenting evidence stablishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Soc. Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). This step two "severity" requirement is *de minimis* and limited to screening out the weakest of claims. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). But the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).

---

[2] The Commissioner's Regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1522(b), 416.922(b).

### A. Evaluation of Morshed's Headaches/Migraines

Morshed's medical records contain numerous complaints of and references to headaches and migraines. In the few months before and after his alleged onset date, Morshed visited DENT Neurologic Institute numerous times specifically seeking treatment for headaches. Tr. 331-38. On July 30, 2013, Morshed was seen at DENT Neurologic Institute to follow up for headaches. Tr. 331. The treatment notes from this time—including visits before the alleged onset date and for dates after—discuss numerous medications Morshed was using or had used to try to alleviate headaches and migraines. Tr. 331-38.

On November 2, 2013, Morshed went to the emergency department of Mercy Hospital of Buffalo, complaining that he "felt sick to [his] stomach and had a headache and it made [him] pass out." Tr. 432. On another visit to the same emergency department on January 22, 2015, Morshed reported having an anxiety attack and the "worst [headache] he has ever had." Tr. 444. On December 9, 2015, Morshed went to another emergency department, complaining of pain to the forehead and an aching headache. Tr. 597. The notes from this visit observe that the "patient has had previous headaches" and "the symptoms are aggravated by lights, noise, stress." Tr. 597.

Dr. Miller's consultative opinion—to which the ALJ gave "great weight"—noted Morshed's complaint of experiencing migraines for the past six or seven years but taking ibuprofen helps. Tr. 24, 611. Dr. Miller noted that Morshed saw a neurologist in 2012 and was diagnosed with migraines, and discussed some of the

8

treatment involved. Tr. 611. At that time, Morshed reported an average of three headaches per week and photophobia and phonophobia associated with them. Tr. 611. In the diagnoses section of that opinion, Dr. Miller listed "Migraines versus rebound headaches." Tr. 614. As for Dr. Ippolito's psychiatric evaluation—to which the ALJ gave "partial weight"—this opinion also noted Morshed's headaches, specifically in connection to his panic attacks and anxiety. Tr. 24, 606.

At the hearing before the ALJ, Morshed repeatedly testified that he has headaches "everyday all the time." Tr. 46; *see also* Tr. 42. In response to questioning, Morshed indicated that having these headaches daily and "all the time" interferes with his being able to do things around the house. Tr. 47. Morshed acknowledged that he was not sure of the source of these headaches, including whether they came from his anxiety or as side effects from his numerous medications. Tr. 42 ("I can't really tell, because I'm on so much medications."); *see also* Tr. 47 ("Dr. [phonetic name] said it is because of my anxiety."). Morshed also talked about headaches and migraines in the context of the physical symptoms associated with his panic attacks and anxiety attacks. Tr. 48-49.

## B. Application

Morshed's headaches and migraines are mentioned throughout the treatment history and the record. Morshed listed migraines and headaches as alleged impairments when he applied for benefits. Tr. 69, 83. At step two of the evaluation, the Commissioner must "consider[s] the medical severity of [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

While the ALJ did find Morshed's depression and anxiety to be severe impairments, the ALJ failed to evaluate any evidence of Morshed's migraines and headaches in the record, and did not make any severity determination with respect to Morshed's headaches and migraines. Tr. 19-20. Indeed, the ALJ did not even mention headaches or migraines at step two, despite Morshed alleging these conditions in his application. Tr. 19-20. This is "troubling" because the medical records and Morshed's testimony indicate that Morshed's headaches and migraines are frequently linked to his other impairments, including anxiety—but there is little discussion as to "combined effect(s) or causal relationship(s)." *See Crewe v. Comm'r of Soc. Sec.*, 17-CV-1309S, 2019 WL 1856260, at *4 (W.D.N.Y. Apr. 25, 2019). The omission continues through the next step, where the ALJ determined that Morshed does not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. *See id.*; Tr. 20.

The Court concludes that this was legal error. *See, e.g., Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (concluding the ALJ erred in failing to consider whether the plaintiff's social anxiety was a severe impairment); *Michels v. Berryhill*, No. 1:15-CV-00688 (MAT), 2018 WL 1081013, at *2 (W.D.N.Y. Feb. 28, 2018) ("Despite these copious references in the record to Plaintiff's learning disorder, at step two of the five step analysis, the ALJ made no mention of this impairment, nor did he assess its severity. This was indisputably error."). In particular, the ALJ's analysis at step two "does not reflect any explicit consideration

of the evidence of record" related to Morshed's alleged headache and migraine impairment—and leaves the Court "unsure as to whether the ALJ found this impairment to non-severe or even non-medically determinable." *Carl D. v. Comm'r of Soc. Sec.*, No. 8:18-CV-1106 (DJS), 2019 WL 5537627, at *6 (N.D.N.Y. Oct. 25, 2019); *see also Crewe*, 2019 WL 1856260, at *6 ("[T]his Court is not tasked with deciding whether substantial evidence supports a finding that Plaintiff's headaches are not severe, because the ALJ did not make such a determination, nor did she present any rationale for failing to do so.") From the Court's review of the ALJ's decision and the evidence, it is not clear that the ALJ properly considered the entirety of the evidence related to Morshed's alleged headache and migraine impairment.

As the Commissioner correctly argues, an error by the ALJ at step two regarding the assessment of severity is, in many cases, harmless. Notably, if the Commissioner fails to consider an impairment at step two, the error may be harmless if the Commissioner continues through the steps and considers the omitted impairment in the later analysis. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (concluding the error at step two was harmless because the ALJ identified other severe impairments, proceeded with the subsequent steps, and specifically considered the omitted impairments in those subsequent steps); *McCartney v. Comm'r of Soc. Sec.*, No. 07-1572, 2009 WL 1323578, at *16 (W.D. Pa. May 8, 2009) ("Even if the Court was to find that the ALJ did err in excluding headaches from the list of impairments, any such error was harmless because the

11

ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."). But this type of "harmless error" finding is appropriate only when it is clear that the ALJ considered the claimant's headaches and their effect on his or her ability to work during the balance of the sequential evaluation process; remand is appropriate if the Commissioner fails to consider the omitted impairments at the subsequent steps. *See, e.g., Lozada v. Comm'r of Soc. Sec.*, No. 1:19-CV-0640 CJS, 2020 WL 5350176, at *4 (W.D.N.Y. Sept. 4, 2020) (citing *Reices-Colon*, 523 F. App'x at 798).

As applied to this case, the ALJ's failure to articulate a finding regarding the severity of Morshed's headaches and migraines at step two could be viewed as harmless because the ALJ did find at least one other impairment severe, continued the sequential evaluation, and mentioned Morshed's headaches in the RFC analysis. *See Carl D.*, 2019 WL 5537627, at *6. The ALJ's report mentions only that Morshed indicated "his headaches are constant," that Morshed "indicated his medication causes headaches as a side effect," and that a moderate noise limitation was added to the RFC because Morshed "reported headaches as a side effect of medication." Tr. 22, 25. But these very limited references to Morshed's headaches and migraines leave the Court "unsure" if the ALJ adequately considered the evidence and limitations of this impairment at step two and later steps. *Carl D.*, 2019 WL 5537627, at *6 (citing *Fuimo*, 948 F. Supp. 2d at 269-70); *see also Crewe*, 2019 WL 1856260, at *6 ("[T]he ALJ's brief acknowledgement of Plaintiff's

12

headaches in the RFC determination does not suffice as consideration of 'the effect of all impairments, including non-severe impairments,' as Defendant claims."). In particular, without additional explanation or discussion of the evidence, it is not clear how the ALJ arrived at the conclusion that Morshed's headaches are a "side effect" of medication. Even if the Court were to assume that the ALJ is relying on Morshed's testimony for this conclusion, Morshed's testimony is not at all conclusive on the cause for his headaches and migraines. *See* Tr. 42-43 ("I mean I have headaches all my—all the time. It just – I can't really tell, because I'm on so much medications."); *see also* Tr. 47 ("Dr. [phonetic name] said it is because of my anxiety."). And the ALJ cites to no medical evidence to support this assessment of Morshed's headaches as side effects.

Without more explanation or indication that the ALJ considered the medical evidence of Morshed's headaches and migraines, the ALJ has not provided a rationale in the decision "sufficient to allow this Court to conduct an adequate review of [her] findings." *See Carl D.*, 2019 WL 5537627, at *8 (collecting cases). *Compare Takeylyn G. v. Saul*, No. 1:18-CV-292 (ATB), 2019 WL 3369266, at *4 (N.D.N.Y. July 26, 2019) (concluding that any failure by the ALJ to find the plaintiff's headaches severe was harmless error where ALJ's RFC analysis referenced treatment records, specifically noted how medication improved the plaintiff's headaches, and considered all of plaintiff's impairments and related limitations), *and McCartney*, 2009 WL 1323578, at *15-16 (concluding the ALJ did not err in excluding headaches from the list of severe impairments where the ALJ

13

thoroughly discussed the complaints of headaches in treatment notes, the plaintiff's reported improvement with treatment, and the plaintiff's testimony), *with Cooper v. Berryhill*, 17-CV-6782-JWF, 2019 WL 1233686, at *2 (W.D.N.Y. Mar. 15, 2019) (concluding the ALJ's error at step two was not harmless because the ALJ's RFC finding did not appear to address any limitations resulting from plaintiff's chronic headaches). Even an impairment found not to be severe is entitled to consideration by the ALJ. *Booker v. Astrue*, No. 1:07-cv-646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) (citing 20 C.F.R. § 404.1545(a)(2)).

In light of the ALJ's failure to evaluate the medical evidence of Morshed's headaches and migraines, the Court has no basis to evaluate whether the ALJ properly excluded the migraines as a severe physical impairment or sufficiently considered the related limitations in the RFC analysis. *See id.* (the complete absence of an explanation or specific finding regarding the claimant's left foot condition was "error significant enough to defeat meaningful review at step two and, consequently, each successive step"). Thus, remand is required.

### C. Morshed's Remaining Arguments

The error at step two, discussed above, is a sufficient basis for reversal of the Commissioner's decision and remand for further proceedings. Because, on remand, the ALJ will perform a new sequential evaluation, the Court need not address Plaintiff's remaining arguments.

## CONCLUSION

For these reasons, the Court GRANTS Morshed's motion for judgment on the pleadings in part and DENIES the Commissioner's motion for judgment on the pleadings. The Commissioner's decision is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   September 30, 2020
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE